In the Matter of GERSTLE-RHEIN S. A., Petitioner. MERRY HULL INCORPORATED, Respondent.

Supreme Court, Special Term, New York County, April 8, 1949.

*Davis Regosin* and *Bernard Regosin* for petitioner.

*James H. Halpin* and *Adrian P. Driggs* for respondent.

HOFSTADTER, J. The petitioner, as the holder of 50 shares of the preferred stock and 150 shares of the common stock of Merry Hull Incorporated, a New York corporation, having filed objection to the consolidation of this corporation with Merry Mites, Inc., an Ohio corporation, seeks an appraisal of its stock pursuant to the Stock Corporation Law. The application is opposed on the ground that the objection was not timely.

The fusion of the two corporations was unquestionably a consolidation under section 91 of the Stock Corporation Law and the petitioner does not argue otherwise. Nor does the petitioner deny that it failed to file its objection within the time prescribed by that section — prior to the vote or, in a case such as the present where notice of the meetings for consideration of the proposed consolidation was not mailed at least twenty days prior to the taking of the vote, within twenty days after the mailing of the notice. The notice of the meeting called for December 15, 1948, was mailed on December 3, 1948. The petitioner, therefore, had until December 23, 1948, to file its written objection. The petitioner did not file its objection until January 3, 1949.

The petitioner contends that it was misled by the corporation to regard the union as a merger under section 85 rather than a consolidation under section 91 of the Stock Corporation Law and that the corporation is foreclosed by estoppel from questioning the timeliness of the objection. The decision of the application turns on the validity of this contention.

The claim of estoppel springs in large part from the use of the term " merger " as well as " consolidation " in referring to the proposed union of the two corporations. Thus, the formal notice of the meeting of December 15, 1948, invited attendance " to consider and vote upon a merger agreement providing for the merger and consolidation * * * ". At a conference

between the attorneys before the meeting the corporation's attorneys spoke of a contemplated merger agreement and gave the petitioner's attorneys a financial statement of the two corporations prepared by an accountant which likewise referred to the " proposed merger ". It may be assumed, too, that in the statements made at the stockholders' meeting held on December 15, 1948, both " merger " and " consolidation " were used. But making the fullest allowance for this possibly loose and legally inaccurate language, the fact remains and is indeed undisputed that at the stockholders' meeting both the agreement and the certificate of consolidation were available for inspection to any stockholder wishing to do so. The petitioner was represented at the meeting by its attorneys who were free to examine the papers and cannot plead ignorance of their contents because they refrained from reading them.

The agreement is called " Agreement of Consolidation and Merger " and contains this recital: " Whereas, the respective boards of directors of the constituent corporations deem it advisable that Hull consolidate and merge with and into Mites in accordance with the provisions of Section 91 of the Stock Corporation Law of New York and Section 8623–67 of the Ohio General Code ".

The certificate is entitled " Certificate of Consolidation * * * Pursuant to Section 91 of the New York Stock Corporation Law."

These documents, of course, make it crystal-clear that what was being done was to effect a consolidation under the sanction of section 91 of the New York Stock Corporation Law. I am of the opinion that since these documents were actually open to inspection at the stockholders' meeting the petitioner is chargeable with notice that the union, whatever called colloquially, was in law a consolidation under section 91.

The asserted estoppel must be rejected for another reason. Both section 85 and section 91 form part of article 8 of the Stock Corporation Law entitled " Merger and Consolidation ".

The distinction between merger and consolidation is well recognized and there is no need to discuss it at length. It is sufficient for present purposes that section 85 which deals with merger is confined to cases in which a stock corporation, with exceptions to be noted, owning all the stock of another stock corporation absorbs the latter by merger. The exceptions permit a gas or electric corporation, as defined in the Transportation Corporations Law, owning at least 95% of the out-

standing shares of each class of stock of a similar corporation to take over by merger such similar corporation and, under certain conditions, also permit the merger of railroad, bridge and omnibus corporations. Subdivision 7 of section 85 provides that in the event all the stock of the corporation proposed to be merged is not owned by the possessor corporation, "any stockholder of the corporation so to be merged may, within twenty days after the filing of the certificate with the secretary of state, object to such merger and demand payment for his stock". Since the right of appraisal and payment is thus given to the dissenting stockholder of the merged and not of the possessor corporation, it is evident that the right can be invoked only in a case in which all the stock of the merged corporation is not owned by the possessor corporation. But under section 85 the only instance in which merger of a possessor with a partially owned corporation is allowed is when the corporations are within the excepted groups already enumerated. Unless the corporations are within this limited class a merger under section 85 is authorized only when the possessor owns the entire outstanding stock of the merged corporation. In this last case an appraisal is, of course, unnecessary and would be meaningless. There is no suggestion that either Merry Hull Incorporated or Merry Mites, Inc., falls within any of the enumerated exceptions. It follows that in no event could a merger of the two corporations have been effected under section 85. Since a reading of section 85 discloses its complete inapplicability it is difficult to see how the petitioner can derive an estoppel from its reliance on this section.

The difference in the time within which objection must be filed to a merger under section 85 and to a consolidation under section 91 may well rest on sound, practical reasons. The occasion for appraisal under section 85 will obviously be much less frequent than under section 91. Section 91 gives the right of appraisal to a dissenting stockholder of any of the constituent corporations and the amount of dissenting stock is uncertain and potentially at least unlimited. The dissent might be so substantial as to make the proposed consolidation improvident or even not feasible; the advantage of knowing before the vote is taken what dissent is faced is evident. The corporation can assure itself of this timely knowledge simply by giving not less than twenty days' notice of the meeting.

Whatever the reason for requiring earlier objection in the case of a consolidation under section 91, the court must enforce the statute. The proceeding for appraisal is purely statutory

and unless the requirements of the statute are met the proceeding must fail (*Matter of O'Brien* [*American Locomotive Co.*], 182 Misc. 577; *Roselle Park Trust Co.* v. *Ward Baking Corp.*, 177 Md. 212).

Even assuming the statutory time could be extended by estoppel, the facts here fall far short of establishing an estoppel. The respective versions of what occurred differ only in detail and were every factual dispute resolved in the petitioner's favor the result would still have to be the same. I do not imply any lack of good faith on either side. I am convinced that the corporation did not intentionally mislead the petitioner and that the petitioner's plight, though unfortunate, cannot be attributed to any conduct of the corporation. The application is accordingly denied.